(16 App. Div. 408.)

### QUINN v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   April 23, 1897.)

MUNICIPAL CORPORATIONS—CONTRACTS—ESTOPPEL CLAUSE.

    A street-paving contract provided that the certificates of certain city officers should be conclusive as to compliance with the contract, and also that the city should not be estopped by any certificate to show the true "amount and character of the work which shall have been done, and materials which shall have been furnished by the contractor." *Held*, that the estoppel clause did not authorize the city, after the required certificates had been given, and the work accepted, to show that the materials and work, though of the general kind specified in the contract, were not good of their kind, but it only authorized the city to show that the materials furnished and the work done were not of the general kind required by the contract.

Appeal from circuit court, New York county.

Action by James Quinn against the mayor, aldermen, and commonalty of the city of New York.  From a judgment entered on a verdict in favor of plaintiff, directed by the court, defendant appeals.  Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and PARKER, JJ.

Chase Mellen, for appellant.

L. Laflin Kellogg, for respondent.

RUMSEY, J.   It appeared in this case that the plaintiff had a contract with the defendant, made through the instrumentality of the commissioner of public works, by which the plaintiff was to regulate and pave with granite block pavement, in the manner prescribed by the contract, the carriageway of Greenwich street, from Fulton street to Battery Place.  After the contract had been performed, as it was claimed by the plaintiff, he procured the work to be inspected by the proper officials, and obtained a certificate of the completion of the work, which, as he insisted, entitled him to be paid the amount remaining unpaid upon the contract.  The defendant refused to pay

him, and he thereupon brought this action, in which he recovered at the circuit.

It was claimed that the defendant was authorized to refuse payment to the plaintiff by virtue of a certain provision in the contract, called in the case the "estoppel clause," to which more especial reference will be made directly. The contract provided that the party of the second part (the plaintiff) should not be entitled to demand or receive payment for any portion of the work until it should be fully completed in the manner set forth in the agreement, and such completion certified by the surveyor, inspector, and water purveyor in charge of the work, and until each and every of the stipulations before mentioned in the contract should be complied with, and the work completed, to the satisfaction of the commissioner of public works, and accepted by him; and thereupon the defendant agreed to pay, and bound itself and its successors to pay, the second party, in cash, on the expiration of 30 days from the completion and acceptance, the money to which the plaintiff should be entitled. All the certificates were obtained, and the work was accepted by the commissioner, and in that respect the requirements of the contract were fully complied with. The certificate thus given is binding upon both parties, in the absence of any proof of corruption, bad faith, or misconduct, or unless a palpable mistake appears upon the face of it. Smith v. Mayor, etc., 12 App. Div. 391, 42 N. Y. Supp. 522. The rule laid down in that case has uniformly been accepted as the rule of law to be applied in the construction of these certificates. But in that case, as in many others, no question was raised upon what has been called the "estoppel clause" of the contract, which is relied upon by the defendant here as a defense. That clause reads as follows:

"(28) And it is hereby expressly agreed and understood by and between the parties hereto that the said parties of the first part, their successors and assigns, shall not, nor shall any department or officer of the city of New York, be precluded or estopped by any return or certificate made or given by any engineer, inspector, or other officer, agent, or appointee of said department of public works or said parties of the first part, under or in pursuance of anything in this agreement contained, from at any time showing the true and correct amount and character of the work which shall have been done and materials which shall have been furnished by the said party of the second part, or any other person or persons under this agreement."

Relying upon that clause, the defendant offered to show that the concrete furnished under the contract was much less in amount than that required; that it was improperly mixed, and was not of the quality required by the contract. It offered to show, further, that the paving blocks on portions of the street were unfit for paving purposes; that many of them, instead of being $3\frac{1}{2}$ and 4 inches, as prescribed by the contract, were 6 inches, in width; that the pavement in some parts of the work was readily disintegrated; that the street, after about 18 months' use, could only be put in good condition by repaving a considerable portion of it with new blocks; and that in many instances the bridge stones were not properly pointed and beveled, as required by the contract. The court permitted the defendant to show that the actual amount of concrete required by the contract had not been furnished, and the reduction to which the de-

fendant would be entitled was made; so that no further question arises upon that branch of the case. But the court refused to permit the defendant to show that the paving blocks were not properly fitted, or that they were improper in size, that the joints were not cemented, that the pavement was disintegrated, and that the bridge stones were not properly beveled; and whether or not this refusal was proper is the question to be decided in this case.

In Brady v. City of New York, 132 N. Y. 415, 30 N. E. 757, the construction of such a clause in another contract for municipal work came before the court of appeals, and it was held that under this clause the certificates of the engineer and the acceptance by the commissioner of public works did not estop the defendant from showing that the amount of material certified for had not been furnished or the full amount of work done. It was further held that the city would be also at liberty, under the authority granted in that clause, to correct, in an action against it, the estimates as to kinds of material furnished, so as to prevent a recovery for any greater sum under the contract than was therein stipulated for. It was not disputed in that case that the amount of work claimed for had actually been done. The allegation of the defendant was that it had not been done in the way required by the contract, and that on that account the contract had not been fully complied with. But the court held that, in the absence of any allegation of fraud in procuring the certificate of the engineer, the city was not authorized under that section to question anything more than the amount of work done. In this case there is no attempt to question that the work done was the work provided for by the plaintiff's contract. The claim of the defendant is that although the materials furnished were of the general kind required by the contract, and the pavement was laid generally in the way that the contract directed, yet the materials furnished were not good of their kind, and were not properly put into the pavement, so that the work, when completed, was not of the quality required by the contract. We do not think that the "estoppel certificate," so called, gives the defendant the right to raise these questions. The proof excluded amounted simply to showing that the work was not properly done. It was not denied that the pavement was laid, and that it was of the kind contracted for; but it was said that it was not good of its kind. This, we think, was not within the estoppel clause. The word "character," which is there used, is not perhaps an entirely accurate word to express the meaning the parties intended; but a fair construction of the word as used in this connection is that the defendant might show the true and correct kind of the work that had been done,—that is to say, that the work done was not of the general kind required by the contract. That, we think, is as far as this clause allows the defendant to go in that connection. The certificate of the engineer and the acceptance of the commissioner of public works are the criteria by which it must be judged whether the work was good of its kind; and if that certificate has been given, and the work has been accepted, then, in the absence of fraud or palpable mistake, the plaintiff may insist upon the certificate, and the defendant cannot question it.

There is left, then, to the defendant, under the estoppel clause, only the right to say that the work accepted was not the work that was agreed to be done by the contract, and that the materials put into it were different from those required by the contract, or were less in amount than the defendant was apparently entitled to under the certificate. It is not at liberty to show, in spite of the certificate, that the materials which were put into the work, and accepted, were not proper, because of some defect in them, or in the way in which the work was done, for they comply in description and kind with those called for under the contract. Within this construction, we think the ruling of the court below was correct, and the defendant was not entitled to the evidence which it offered to give as to the quality of the materials and the manner of doing the work.

The judgment, therefore, must be affirmed, with costs. All concur.